UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60257- Judge ZLOCH
18 U.S.C. § 371

UNITED STATES OF AMERICA

V.

ALAN D. MENDELSOHN,

DEFENDANT.

_____/

FILED by _____ D.C.

DEC - 9 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

## INFORMATION

The United States charges:

### COUNT 1
### Conspiracy to Commit Wire fraud, File False Tax Returns,
### and Make False Statements
### 18 U.S.C. § 371

1.      At all times relevant to this information, defendant ALAN D. MENDELSOHN was a physician living and practicing medicine in Broward County, Florida. MENDELSOHN was also active in political fund raising and lobbying officials of the State of Florida.

2.      At all times relevant to this information, Coconspirator #1 was a lobbyist and campaign consultant working in Florida and other places.

3.      Beginning in at least 2003, MENDELSOHN was an officer of a political organization that was affiliated with a medical association ("PAC #1), and had authority to sign checks on the bank account of PAC #1.

4.      Beginning in or about October 2002, MENDELSOHN and Coconspirator #1 caused the creation of political organizations, including PAC #2 and PAC #3, to receive and spend money under Florida and federal laws; MENDELSOHN and Coconspirator #1 exercised control over these



political organizations; however, the public records of PAC #2 and PAC #3 did not disclose any connection between MENDELSOHN and these organizations.

5.     Under Florida and federal laws, the officers of each of the PACs were required to prepare and publicly file periodic reports with the State of Florida or the Internal Revenue Service ("IRS") that detailed contributions received and expenditures made. Additionally, IRS forms were required to be filed by the PACS, including form 1099s for payments over a certain amount for services from independent contractors, and form W-2s for wages over certain amounts.

6.     Beginning in or about 2003, Coconspirator #1 caused the creation of two corporations under Florida law and elsewhere. The public records of the corporations did not disclose any connection between MENDELSOHN and the corporations. The officers of the corporations were required to file with the IRS income tax returns and forms 1099 and W-2.

7.     Beginning in or about 2003, MENDELSOHN agreed to provide lobbying services to certain persons and businesses on matters pending before the Florida legislature and the Florida executive branch; certain of these persons and businesses also contributed to PAC #1, PAC #2 and PAC #3, or were solicited to contribute to these PACS, including Contributor #1, Contributor #2, and Contributor #3.

8.     Beginning in or about October 2006, the United States Attorney's Office in the Southern District of Florida publicly filed federal criminal charges against several former officers and employees of a company controlled by Contributor #2, which related to the sale of viaticals ("the federal investigation"). The federal investigation remained active in May and June 2007.

9.     From in or about 2002 through in or about 2009, in Broward County, in the Southern District of Florida, and elsewhere, the defendant

2

**ALAN D. MENDELSOHN,**

did knowingly conspire, confederate and agree with Coconspirator #1 and other persons known and unknown to:

      a.     File and cause to be filed with the IRS personal joint federal income tax returns for defendant MENDELSOHN that were false in that MENDELSOHN willfully failed to include material amounts of income in each of the years 2003 through 2006, including income MENDELSOHN earned from lobbying services, his medical practice, and from money he diverted to himself and others for his benefit from PAC #1, PAC #2, and PAC #3, in violation of Title 26, United States Code, Section 7206(1).

      b.     File and cause to be filed with the IRS reports of income and disbursements for PAC #1, PAC #2 and PAC #3, and the corporations used, and Forms 1099 and W-2, which (i) mischaracterized and inaccurately reported the actual recipients of funds paid, or (ii) falsely reported that persons were paid for services to PAC #1, PAC #2, and PAC #3, all to conceal income to MENDELSOHN and to others, including income to an associate of a Florida State Senator and to that Senator, in violation of various of rules and statutes, including Title 26, United States Code, Section 7206(1).

      c.     Devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and knowingly cause wire transmissions in interstate commerce, in that MENDELSOHN made false representations to his lobbying clients to induce them to make PAC contributions and other donations, in violation of Title 18, United States Code, Sections 1343 and 2.

d.    Make false statements to federal agents to conceal the conspiracy and its

objects, and to perpetuate it, in violation of Title 18, United States Code, Section 1001(a)(2).

## THE PURPOSE OF THE CONSPIRACY

10.    The purpose of the conspiracy was for MENDELSOHN and his coconspirators to

unjustly enrich themselves by diverting to their personal use and benefit contributions to

PAC #1, PAC #2, and PAC #3, and donations to other organizations.  A further purpose of the

conspiracy was to maximize such benefits to MENDELSOHN and others by making payments under

circumstances enabling MENDELSOHN and others to conceal their income from the IRS.

## MANNER AND MEANS

The conspiracy was carried out in the following ways, among others:

11.    Beginning in late 2002, MENDELSOHN and Coconspirator #1 would and did use

PAC #1, PAC #2, PAC #3, and certain corporations, together with false entries in the records,

reports, and tax filings of those entities and of individuals, to conceal the true source, uses, and

beneficiaries of funds held by the PACS.

12.    MENDELSOHN would and did raise money for PAC #1,  PAC #2, and PAC #3,

including, from in or about 2003 through 2009, several million dollars in contributions to

PAC #2 and PAC #3, and a smaller amount for PAC #1, from various persons and businesses.

13.    Coconspirator #1 would and did cause the creation of PAC #1, PAC #2, and

PAC #3, and cause the receipt and distribution of funds solicited for the PACs among the PACs and

corporations as agreed with MENDELSOHN.  Coconspirator #1 also would and did prepare and

cause to be filed with the IRS and the State of Florida all reports and forms for the PACs and the

corporations used by members of the conspiracy.

4

14.     MENDELSOHN would and did conceal his lobbying income from state and federal tax authorities and from the Florida Office of Legislative Services by causing Contributor #1 and Contributor #3 to make payments for his lobbying services to a private school, where the money was credited against MENDELSOHN's tuition expenses.

15.     MENDELSOHN would and did make false representations and promises to induce Contributor #2 to make substantial contributions to PAC #2 in 2007.

16.     MENDELSOHN would and did cause money to be diverted from PAC #1, PAC #2, and PAC #3, directly and through corporations, to pay his personal debts and otherwise for his own benefit, which payments he knew to exceed any amounts he was entitled to as expense reimbursements from the PACs.

17.     MENDELSOHN also directed and caused money to be diverted from PAC #1, PAC #2, and PAC #3, directly and through various corporations, to make payments to an associate of a Florida State Senator knowing that some or all of the payments were benefitting the official by allowing the official to receive money without paying income taxes.

18.     MENDELSOHN would and did make false statements to federal agents investigating his activities to conceal and perpetuate the conspiracy.

**OVERT ACTS**

19.     In furtherance of the conspiracy and to accomplish its purposes, at least one coconspirator committed at least one of the following overt acts, within the Southern District of Florida, and elsewhere:

a.     In or about November 2003, in exchange for lobbying and other services, MENDELSOHN caused a wire transfer of $75,000 to be sent to a car dealer to purchase a car for his

5

personal use, which he did not report as income on his personal income tax returns.

        b.     In 2004 and 2005, MENDELSOHN caused Contributor #1 and Contributor #3, who were his lobbying clients, to make what he termed donations to a private school in exchange for his lobbying services. MENDELSOHN then caused these payments to be used to pay his tuition bills for his children's education. In doing so, MENDELSOHN caused these payments to be omitted from or falsely characterized in the Contributors' and his own tax returns, and in other forms and reports filed with the IRS and the State of Florida.

        c.     From 2003 through 2006, MENDELSOHN caused approximately $330,000 of the contributions that MENDELSOHN solicited for PAC #1, PAC #2, and PAC #3 to be diverted to his personal use and benefit through payments to third-parties and to people to whom he owed money, including payments for tuition expenses, tutoring expenses, a bonus for an employee of his medical practice, credit card charges for personal items, a car, expenses for the purchase of a house, and gifts. These payments were made in an effort to conceal MENDELSOHN's receipt of the payments from the IRS.

        d.     From in or about 2003 through 2005, MENDELSOHN and Coconspirator #1 caused payments to be made using funds contributed to PAC #1, PAC #2, and PAC #3, directly and through a corporation, to a person associated with a person who was then a Florida State Senator. These payments totaling approximately $82,000 were made knowingly to the associate to conceal the Senator's receipt of some or all of the payments from the IRS.

        e.     In or about late April or early May 2007, MENDELSOHN contacted Contributor #2 and solicited contributions of approximately $400,000 to PAC #2, claiming that the money would be used to pay for televison advertisements in a campaign for public office. After

6

Contributor #2 advised MENDELSOHN that he was under federal investigation, in subsequent conversations, MENDELSOHN falsely represented to Contributor #2 that he had entered into an agreement with senior government officials of the State of Florida who had agreed to exert pressure on the federal prosecutors investigating Contributor #2 to close their investigation in exchange for the $400,000 in contributions to PAC #2, and in gratitude for past and future contributions that Contributor #2 might make for the benefit of the senior government officials. In other conversations, MENDELSOHN also made false representations to Contributor #2 about things that the officials were doing for his benefit to close the investigation. MENDELSOHN communicated with the contributor by emails, which were transmitted in interstate commerce, and MENDELSOHN provided Contributor #2 with wiring instructions for payment of the contributions, which would also be transmitted in interstate commerce.

      f.     On or about May 26, 2007, MENDELSOHN met with Contributor #2 and received a payment of $150,000 in contributions in exchange for the agreement to close the federal investigation.

      g.     On or about May 27, 2007, at the FBI's offices in North Miami, Florida, defendant MENDELSOHN, after consulting with legal counsel, met in a voluntary interview with FBI Special Agents who advised him that they were investigating allegations against him. To conceal and perpetuate the conspiracy, and in answer to the FBI Special Agents' questions, MENDELSOHN knowingly and willfully made the following materially false, fictitious, and fraudulent statements and representations:

      (i.)     MENDELSOHN falsely told the Special Agents that Contributor #2 and Contributor #2's wife surprised him with a gift of a pre-paid luxury car, and that

7

it was waiting for him to pick up at the dealership Contributor #2 identified, when in truth and in fact, as defendant MENDELSOHN well knew, MENDELSOHN selected the car and directed Contributor #2 to have $75,000 wired to the dealership in exchange for his lobbying services to Contributor #2 and his companies; and

(ii).   MENDELSOHN falsely told the Special Agents that he never received any financial benefit from any of the political organizations for which he solicited contributions, when in truth and in fact, as defendant MENDELSOHN well knew, he had received significant financial benefits directly and indirectly from the political organizations for which he raised money, including payments of approximately $330,000 to himself and to third-parties for his benefit, which were in excess of any reimbursements of any legitimate expenses he incurred.

Summary of Unreported Income

h.   In or about the years 2004 through 2007, in Broward County, and elsewhere, MENDELSOHN, did willfully make and subscribe joint U.S. Individual Income Tax Returns for the calendar years 2003 through 2006, which returns were verified by a written declaration that each was made under penalties of perjury, but which MENDELSOHN knew were not true and correct as to every material matter. In such joint income tax returns filed with the IRS, MENDELSOHN knew that he failed to report significant additional income he received from various sources, summarized in the chart in paragraph j below, in the years 2003 through 2006, which totaled approximately $618,770.

i.   In the years 2003 through 2005, MENDELSOHN also made and caused payments totaling approximately $82,000 to be made by PAC #1, PAC #2 and PAC #3 directly and through one of the corporations controlled by Coconspirator #1 to a person associated with a Florida

8

State Senator. MENDELSOHN and Coconspirator #1 knew and understood that some or all of these payments were benefitting the Senator by allowing the Senator to receive money without paying taxes on the money received which is summarized in paragraph j below.

      j.    In the years 2004 through 2007, MENDELSOHN made and caused to be made and filed with the IRS, his own false joint income tax returns in which he failed to report the income set forth below from the following sources, and made and caused payments to be made to an associate of a public official which he believed would not be reported to the IRS in the following approximate amounts:

| Year | Lobbying Income | Medical Practice Income | Political Organization Payments to Mendelsohn | Political Organization Payments That Benefitted the Public Official | Approximate Total of Income Unreported to the IRS |
|------|-----------------|-------------------------|-----------------------------------------------|--------------------------------------------------------------------|---------------------------------------------------|
| 2003 | $75,000 | $50,740 | $50,000 | $5,000 | $180,740 |
| 2004 | $25,000 | $55,030 | $250,000 | $35,000 | $365,030 |
| 2005 | $25,000 | $37,000 | $30,000 | $42,000 | $134,000 |
| 2006 |  | $21,000 |  |  | $21,000 |

All in violation of Title 18, United States Code, Section 371.

Jack Smith
Chief, Public Integrity Section

Mary K. Butler
Eric G. Olshan
Trial Attorneys
U.S. Department of Justice
Washington, DC 20005

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET for INFORMATION

### COUNT 1

**Defendant's Name: Alan D. Mendelsohn**

**Count #: 1**          **18 U.S.C. § 371**  Conspiracy

**\* Max.Penalty**:          5 years imprisonment

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO. _____ 09 - CR - 60257

vs.

ALAN D. MENDELSOHN,

**CERTIFICATE OF TRIAL ATTORNEY***

Defendant.
_____/

**Superseding Case Information:**

Court Division: (Select One)

New Defendant(s)          Yes _____    No __✓__
Number of New Defendants
Total number of counts          1

Miami _____   Key West _____
✓ FTL _____   WPB _____   FTP

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:    (Yes or No)    No
      List language and/or dialect _____

4.    This case will take    1    days for the parties to try.

5.    Please check appropriate category and type of offense listed below:

      (Check only one)                                    (Check only one)

      I     0 to 5 days          ✓              Petty _____
      II    6 to 10 days    _____             Minor _____
      III   11 to 20 days   _____             Misdem. _____
      IV    21 to 60 days   _____             Felony    ✓
      V     61 days and over _____

6.    Has this case been previously filed in this District Court? (Yes or No)    Yes
If yes:
Judge: _____ Zloch _____          Case No. _____ 09 - CR - 60257
(Attach copy of dispositive order)
Has a complaint been filed in this matter?    (Yes or No)    No
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No)    No

7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____ Yes    ✓ No

8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    _____ Yes    ✓ No

_____
TRIAL ATTORNEY
Florida Bar No./Court No. IL6290382

*Penalty Sheet(s) attached

REV 4/8/08

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.   09-60257-CR-ZLOCH |
| Alan D. Mendelsohn, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date:   12/09/2010

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Alvin Entin, Esq.
*Printed name of defendant's attorney*

_____
*Judge's signature*

Hon. William J. Zloch, United States District Judge
*Judge's printed name and title*